## No. 25436

**The People of the State of Colorado v. Donald Earl Smith**
(512 P.2d 269)

Decided July 16, 1973.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy E. Ronald Beeks, Assistant, for plaintiff-appellee.

Bill D. LaRue, Tom W. Neal, for defendant-appellant.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Donald Earl Smith (defendant) was convicted by a jury in the Arapahoe County district court of two counts of inflicting bodily injury by operating an automobile while under the influence of intoxicating liquor, in violation of C.R.S. 1963, 40-2-11. We find no prejudicial error and therefore affirm the judgment of conviction.

In the early morning of August 8, 1970, defendant Smith was speeding north on Windermere Boulevard in Littleton, with five passengers in his sports model Camaro Z-28. He was observed by a patrolman, who estimated defendant's speed in excess of eighty miles per hour. The patrolman gave chase but was unable to overtake the defendant. He lost sight of the Camaro but shortly thereafter came upon the scene of an accident at the intersection of Ridge Road and Windermere, where defendant's vehicle had collided with a 1961 Ford. As a result of this collision, Mrs. Patricia Ann Jones, a passenger in the Ford, and Patti Ann Jozwick, a passenger in the Camaro, were injured. The investigating patrolman found a partially empty jug of wine near the Camaro and smelled the odor of alcohol in and about the automobile and on the breath of several of the passengers. Defendant, his five passengers, and Mrs. Jones were taken to Swedish Hospital in Englewood for treatment and observation. There, a blood sample was drawn from the defendant, over his protest, for a laboratory analysis to determine its alcohol content. The test showed a blood-alcohol of 0.15%.

At a pretrial hearing the court denied defendant's motion to suppress as evidence the result of the alcohol analysis as it related to the two felony charges. However, it granted the motion as it related to the misdemeanor count of driving under the influence. 1967 Perm. Supp., C.R.S. 1963, 13-5-30(3)(c). On interlocutory appeal we affirmed the trial court ruling, in *People v. Smith*, 175 Colo. 212, 486 P.2d 8.

After the jury was impaneled and sworn, the district attorney moved the court to dismiss the misdemeanor count of driving under the influence. This motion was granted and the trial proceeded on the two felony counts. At trial, the result of the blood-alcohol test was admitted into evidence. Expert witnesses — a toxicologist and a medical doctor specializing in toxicology — testified concerning intoxication standards as measured by blood-alcohol tests. They described the customary procedures involved in the taking of blood and its analysis, and expressed their expert opinions concerning the validity of the procedures followed in this particular case.

Other evidence of intoxication was presented which consisted of extrajudicial statements by prosecution witnesses to the investigating officers of the drinking and intoxication of the defendant and his passengers earlier in the evening. However, at trial those witnesses uniformly disclaimed any knowledge that the defendant was drinking or had become intoxicated prior to the accident.

No factual issue was raised concerning defendant's operation of the Camaro or the obviously reckless manner in which he was driving the vehicle at the time of the accident.

I.

█ Defendant's first ground for reversal asserts that the chain of custody of the evidence regarding the blood-alcohol test was broken and, therefore, the result of the test should not have been admitted into evidence. We find no merit to this argument.

From the record we perceive no break in the chain of custody of the blood sample. It was drawn from the defendant by the hospital technician and immediately inserted into a sealed glass tube. The tube was then enclosed in a

container which was thereafter sealed. The sealed container was placed in the United States mail, addressed to the Post Office box of the medical laboratory. It was received from the Post Office box personally by the examining toxicologist, who then performed the chemical analysis on the blood sample. No break in the chain of custody of the blood sample was demonstrated.

Defendant's argument, as we understand it, is that the glass tube into which the blood sample was inserted was a substitute tube used in the place of the original tube which, for some unexplained circumstance, was missing from the blood-alcohol kit supplied to the hospital technician. The tube actually used came from an unsealed kit that had been left unattended for approximately two hours. Thus, it is asserted there was the possibility that someone may have tampered with the tube prior to putting the blood into it, rendering the blood-alcohol analysis suspect.

The record shows that the tube actually used was a part of a kit which the officer had opened earlier in the evening to obtain a consent form for the taking of blood. The defendant had refused to sign the form. Approximately two hours elapsed before the officer determined that defendant's consent actually was not required. During this time the opened kit remained in the officer's closed briefcase on the floor in the hospital hallway outside the technician's room where the blood was to be drawn.

No evidence was shown to in any way suggest that tampering with the tube had in fact occurred. On the contrary, there was evidence presented from the technician who drew the blood and the toxicologist who analyzed the blood sample that the tube had not in fact been tampered with. Applicable here is the rule that the burden is upon the party offering the evidence to show to the satisfaction of the court, with reasonable certainty, that there was no alteration of or tampering with the evidence. When it is only speculation that there was tampering, it is proper to admit the evidence and let the jury determine its weight. *People v. Riser,* 47 Cal. 2d 566, 305 P.2d 1. *See also, United States v.*

*Von Roeder,* 435 F.2d 1004 (10th Cir. 1971); *United States v. Freeman,* 412 F.2d 1181 (10th Cir. 1969); *State v. Riley,* 24 Conn. Supp. 235, 189 A.2d 518; *State v. Cook,* 17 Kan. 392; *Commonwealth v. Mazarella,* 279 Pa. 465, 124 A. 163; 2 *Wharton Criminal Evidence* § 665 (12th ed. R. Anderson 1955).

In our view, under the circumstances present here, it would be pure speculation that the tube was tampered with prior to the placing of the blood sample into it. The prosecution was not required to negative every conceivable possibility of tampering but only to establish with a reasonable degree of certainty that no such occurrence took place. The court did not err in admitting into evidence the result of the blood-alcohol test. The weight to be given to it, taking into consideration the possibility of tampering, was for the jury.

II.

■ Defendant contends the court erred in admitting into evidence inconsistent prior statements of certain witnesses, as permitted by 1971 Perm. Supp., C.R.S. 1963, 39-6-12, which provides:

"Witnesses — statements admissible, when. (1)(a) In a criminal proceeding evidence of a statement made by a witness shall not be inadmissible as hearsay when the statement is inconsistent with his testimony at the proceeding, if:

"(b) While testifying the witness was given an opportunity to explain or deny the statement; or the witness has not been excused from giving further testimony in the proceeding; and

"(c) The prior inconsistent statement concerns matters of the witness's own knowledge and not statements made by third persons overheard by the witness; and

"(d) The substance of the prior inconsistent statement is otherwise admissible."

The particular statements objected to related to the drinking and intoxication of the defendant and his passengers during the hours preceding the accident. The most damaging statement was: "We were all drunk."

Defendant objected on the basis that the evidence was offered to impeach, and the foundation necessary to impeach — that of surprise — had not been laid, thus rendering the impeaching statements inadmissible.

■ It is fundamental that the legislature has the power to prescribe new rules, or to revise or alter existing rules of substantive evidence, so long as they do not violate constitutional requirements or deprive any person of constitutional rights. *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319; *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606, *rehearing denied,* 386 U.S. 969, 87 S.Ct. 1015, 18 L.Ed.2d 125; *Morris v. Pacific Electric R. Co.,* 2 Cal. 2d 764, 43 P.2d 276; *People v. Wells,* 380 Ill. 347, 44 N.E.2d 32, 142 A.L.R. 1262; *State v. Sears,* 4 Wash. 2d 200, 103 P.2d 337. The statute in question creates a new rule of substantive evidence, making competent, in criminal proceedings, inconsistent hearsay statements under the conditions set forth in the statute.

There was no showing that the statutory conditions to the admissibility of the prior inconsistent hearsay statements had not been met. The substance of these inconsistent statements was relevant and material to the critical issue in the case — whether the defendant was under the influence of intoxicating liquor. The requirement of showing of surprise as a predicate to the admission of the inconsistent statements is not one of the statutory conditions. Such statements were clearly admissible under the statute, and that they incidentally impeached the prosecution witnesses did not render such evidence inadmissible. No showing of surprise was necessary to their admissibility.

### III.

■ Defendant next contends that under the doctrine of former jeopardy the conviction here must be set aside. He frames his argument in support of this proposition in the following manner.

The information initially contained three counts: two felony counts of which the defendant was convicted, and the misdemeanor count which was dismissed on motion of the

district attorney by the court after the jury had been impaneled and sworn. The trial court had previously granted defendant's motion to suppress the result of the blood-alcohol test in connection with the misdemeanor count, for the reason that the blood was withdrawn from defendant without his consent. 1967 Perm. Supp., C.R.S. 1963, 13-5-30(3)(c). This interlocutory ruling was affirmed by this Court in *People v. Smith, supra,* as heretofore noted. The district attorney, believing he could not establish the necessary consent, therefore moved for dismissal of the misdemeanor count. The court granted this motion over defendant's objection. There is no question that defendant had been placed in jeopardy as to the misdemeanor count of driving under the influence of intoxicating liquor. *Davidson v. The People,* 64 Colo. 281, 170 P. 962.

The federal and state constitutional prohibitions against twice putting a person in jeopardy relate to retrials for the *same offense.* U.S. Const. amend. V; Colo. Const. art. II, § 18. The defendant contends that the misdemeanor count of driving while under the influence of intoxicating liquor is essentially the same offense as the felony count of inflicting bodily injury, by operating an automobile in a reckless, negligent or careless manner, or with a wanton or reckless disregard of human life or safety, while under the influence of intoxicating liquor. We do not agree.

We note that in *People v. Olona,* 180 Colo. 300, 505 P.2d 372, this Court specifically held that driving under the influence of intoxicating liquor and driving while ability is impaired are not lesser included offenses of the felony charge of inflicting bodily injury while under the influence of intoxicating liquor by driving an automobile in a reckless, negligent or careless manner, etc. Persuasive also is *Daniels v. People,* 159 Colo. 190, 411 P.2d 316, which lends further support to our conclusion here. The Court there was concerned with the parallel statute, C.R.S. 1963, 40-2-10, and, in pointing out the legislative concern, stated:

"* * * It should be observed that offenses such as careless driving, reckless driving and drunken driving were enacted for

the purpose of regulating the movement of vehicular traffic on our streets and highways and that such are not concerned with the consequences flowing from, for example, drunken driving. In other words, when the general assembly in 1923 enacted into law that which now appears as C.R.S. 1963, 40-2-10 [40-2-11], it was dealing with a specific problem, *i.e.,* a homicide *[injury]* occasioned by the negligent operation of a motor vehicle by one who is under the influence of intoxicating liquor. No doubt at the time this particular statute was enacted there were other statutes, as well as ordinances, denouncing drunk driving, reckless driving and careless driving. But this particular statute, *i.e.,* C.R.S. 1963, 40-2-10 [40-2-11], is not concerned with drunk driving, reckless driving, or even careless driving, *as such.* Rather this statute evidences a legislative concern for the *result* which flows from the reckless, negligent and careless operation of a motor vehicle by one who is under the influence of intoxicating liquor, the result being the death *[injury]* of a human being. * * *"

We cannot accept defendant's argument that the gravamen of the offenses is "precisely the same"; or that the only difference is that the felony count requires proof of bodily injury; or that the only prohibited conduct is driving while under the influence. A reading of the statutes demonstrates the contrary. The felony count requires proof of two elements for conviction in addition to that of driving while under the influence: first, driving in a reckless, negligent or careless manner, or with a wanton or reckless disregard of human life or safety; and, second, the infliction of bodily injury while so doing.

In *Curtis v. United States,* 67 F.2d 943 (10th Cir. 1933), it was stated that the plea of autrefois acquit is unavailing unless the charge to which it is interposed is precisely the same in law and in fact as the former one relied on under the plea, and that the test as to the identity of the offenses is whether the same evidence is required to sustain each. This principle was approved by this Court in *Johnson v. People,* 152 Colo. 586, 384 P.2d 454. *See also, People v. Bugarin,* 181

Colo. 62, 507 P.2d 875; *Davidson v. The People, supra;* 1 *Wharton Criminal Law and Procedure* § 144 (12th ed. R. Anderson 1955).

We conclude that the offenses are not the same for the reasons that the elements and the required proof for conviction are different. The court's dismissal of the misdemeanor count under circumstances which placed defendant in jeopardy as to that count, therefore, did not bar his prosecution on the felony counts.

### IV.

The last argument for reversal is based upon the asserted inadmissibility of the result of the blood-alcohol test for want of probative value. It is contended in substance that the time factor concerning when defendant last ingested alcohol as related to the time of the blood-alcohol test was so uncertain that no reasonable conclusion could be drawn concerning defendant's condition as to intoxication at the time of the accident. This argument concerns the weight of the evidence. The jury had before it testimony of witnesses who were experts in the field of toxicology and who testified concerning the effects of alcohol upon the human function. We will not substitute our judgment for that of the jury.

The judgment is affirmed.

MR. JUSTICE GROVES specially concurs.

MR. JUSTICE ERICKSON concurs in the result.

MR. JUSTICE GROVES specially concurring:

I concur in the majority opinion, but wish to say something concerning point III. I would not base the result as the majority opinion is grounded.

As is stated in the majority opinion, the defendant has been placed in jeopardy as to the misdemeanor count. I assume that proof of all of the elements of the misdemeanor are necessary to a conviction of either felony count; and, to have a conviction of either felony count, there must be proof of additional elements. In spite of *Crane v. People,* 91 Colo. 21, 11 P.2d 567 (1932), I also assume that, if all evidence could have been considered as to all counts and if the jury

had acquitted as to the misdemeanor count, the guilty verdicts as to the felonies would be rendered impotent. The question involved then becomes, Does the order sustaining the motion to dismiss have the effect of a finding of not guilty which ordinarily would permit the conviction of either felony count from standing?

Under the circumstances here, it would be a fiction to say that the order sustaining the motion to dismiss constituted a *determination* as to the elements of the misdemeanor.

MR. JUSTICE ERICKSON concurring in the result.

I concur in the result. Point III, as it appears in the majority opinion, does not, in my opinion, reflect the prevailing rule of law.

The dismissal of the misdemeanor count, driving under the influence of intoxicating liquor, and the subsequent jury verdict of guilty on the counts of inflicting bodily injury by operating an automobile while under the influence of intoxicating liquor, both occurred during the same prosecution. In my judgment, the problem of former jeopardy would not arise until a later and distinct prosecution. The problem in this case is essentially one of inconsistent verdicts in a single trial. *Thompson v. State,* Ind. , 290 N.E.2d 724 (1972); *People v. Tideman,* 57 Cal.2d 574, 370 P.2d 1007, 21 Cal. Rptr. 207 (1962).

The dismissal of the charge of driving under the influence, which must operate as an acquittal of that charge, is inconsistent with a verdict of guilty of the charge of causing bodily injury while driving under the influence. *See* Annotation: Inconsistency of Criminal Verdict as Between Different Counts of Indictment or Information, 18 A.L.R.3d 259.

The dismissal of the driving under the influence charge after jeopardy had attached could, in my view, preclude a subsequent trial for the charge of causing injury while driving under the influence, but the dismissal of the one charge does not vitiate a conviction of the other charge in the course of the same trial.